1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   **DEIDRE CONKLING,**                )   **NO. SACV 16-1178-KS**
                          **Plaintiff,**    )
12           **v.**                        )   **MEMORANDUM OPINION AND ORDER**
                                   )
13   **NANCY A. BERRYHILL,**[1] **Acting**  )
14   **Commissioner of Social Security,**  )
15                          **Defendant.**  )
16   _____ )

17

18                          **INTRODUCTION**

19

20       Plaintiff filed a Complaint on June 24, 2016, seeking review of the denial of her

21   applications for a period of disability and disability insurance benefits ("DIB").  (Dkt. No.

22   1.)  On April 6, 2017, the parties filed a Joint Stipulation ("Joint Stip.") (Dkt. No. 16) in

23   which plaintiff seeks an order reversing the Commissioner's decision and either ordering the

24   payment of benefits or remanding the matter for further administrative proceedings (Joint

25   Stip. at 32).  The Commissioner requests that the ALJ's decision be affirmed.  (*See id.* at 32-

26

27   ───────────────
     [1]       The Court notes that Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration.
28   Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court orders that the caption be amended
     to substitute Nancy A. Berryhill for Carolyn Colvin as the defendant in this action.

                                   1

1  34.)  On August 9, 2017, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed
2  before the undersigned United States Magistrate Judge.  (Dkt. Nos. 9, 19, 20.)  The Court
3  has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On November 27, 2012, Plaintiff, who was born on September 17, 1961, protectively
filed an application for DIB.[2]  (*See* Joint Stip. at 2; Administrative Record ("AR") 21, 94,
202.)  Plaintiff alleged disability commencing September 23, 2010, due to:  degenerative
disc disease; fibromyalgia; Hashimoto's Disease; carpal tunnel syndrome; sleep apnea;
osteoarthritis; high blood pressure; PTSD; chronic ear infection; and depression.  (AR 236.)
Plaintiff previously worked in the following occupations:  director of business at a health
care facility (DOT 187.117-010); and community outreach worker (DOT 079.117-014).
(AR 33.)  The Commissioner denied Plaintiff's application initially and on reconsideration.
(AR 94, 113.)  On December 10, 2013, Plaintiff requested a hearing.  (AR 129-30.)  On
October 22, 2014, Administrative Law Judge Sharilyn Hopson ("ALJ") held a hearing.  (AR
42.)  Plaintiff, who was represented by counsel, Robert Thompson, M.D., the medical expert
("ME") and board certified orthopedic surgeon, and David Rinehart, the vocational expert
("VE"), testified at the hearing.  (AR 42-73.)  On January 8, 2015, the ALJ issued an
unfavorable decision, denying Plaintiff's application for DIB.  (AR 21-34.)  On April 27,
2016, the Appeals Council denied Plaintiff's request for review.  (AR 1-7.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that Plaintiff met the insured status requirements of the Social Security
Act through December 31, 2014 and had not engaged in substantial gainful activity after the

---

[2]  Plaintiff was 49 years old on the alleged onset date and thus met the agency's definition of a younger individual.
*See* 20 C.F.R. § 404.1563(c).

2

alleged onset date of September 23, 2010.  (AR 23.)  The ALJ further found that Plaintiff had the following severe impairments:  osteoarthritis of the left and right hand; carpal tunnel syndrome; mild disc bulge of the cervical spine with central canal mild narrowing; mild disc osteophyte complex; facet degenerative changes and unconvertebral joint hypertrophic changes resulting in mild foraminal narrowing; degenerative osteoarthritis of the thoracic spine; fibromyalgia; degenerative disc disease/osteoarthritis of the hips and hands; thoracic disc protrusion; lumbar disc bulges with foraminal narrowing; osteoarthritis of the feet; obesity; genital and urinary problems; Hashimoto's disease; sleep apnea; and gout.  (AR 23-24.)  The ALJ found that Plaintiff's medically determinable impairments of depression and anxiety were not "severe" because they did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities.  (AR 24.)  The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).  (*Id.* 25.)  The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform:

> a range of sedentary/light work . . . except:  she can lift and/or carry ten pounds occasionally or frequently; she can stand and/or walk for four hours and sit for six hours during an eight-hour workday with the ability to stand and stretch for one to three minutes per hour every hour; she can occasionally use her hands, including for reaching, handling, and bilateral fingering; can occasionally use foot pedals; can occasionally climb stairs; cannot climb ladders, ropes, or scaffolds; can stoop occasionally; cannot kneel, crouch, or crawl; can occasionally work at unprotected heights; can occasionally work around moving and dangerous machinery; must avoid dust, fumes, and other pulmonary irritants; and can have only occasional exposure to extreme heat or cold.

(AR 25-26.)

The ALJ found that Plaintiff was able to perform her past relevant work as a director of business (DOT 187.117-010) as that occupation is generally/normally performed. (AR 33.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from the alleged onset through the date of the ALJ's decision. (*Id.* 33.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.

4

2005).  However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely."  *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'"  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

## DISCUSSION

Plaintiff alleges the following errors:  (1) the ALJ improperly assessed the medical evidence; (2) the ALJ improperly assessed the credibility of Plaintiff's statements about her symptoms; and (3) the ALJ's assessment of Plaintiff's RFC is not supported by substantial evidence.  (Joint Stip. at 4.)  Plaintiff also suggests that the ALJ erred by failing to find that Plaintiff's depression constituted a severe impairment.  (*See* Joint Stip. at 8.)

## I.      The ALJ's Assessment of the Medical Evidence.

The crux of Plaintiff's first argument is that the ALJ substituted her own non-medical judgment for that of the multiple health care professionals who assessed more restrictive functional limitations than those adopted by the ALJ.  (*See* Joint Stip. at 15.)  Plaintiff names approximately ten medical and vocational professionals whom, she believes, offered opinions that the ALJ improperly evaluated.  (*See* Joint Stip. at 7-8.)  The Court has reviewed all 1,379 pages of the Administrative Record, including each of the ten opinions at issue and any supporting treating notes, as well as the ALJ's decision.  Based on that review, the Court finds that the ALJ improperly assessed three medical opinions:  the opinions of two examining physicians, Drs. Bleecker and Halbridge; and, perhaps most significantly, the

opinion of the medical expert, Dr. Thompson.  The Court's findings are discussed in greater detail below.

## A. Applicable Law

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).  In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *see also Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them").  An ALJ may not render her own medical opinion or substitute her own diagnosis for that of a physician. *See Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (ALJ erred in rejecting physicians' opinions and finding greater residual functional capacity based on claimant's testimony that he took a road trip); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is forbidden from making his or her own medical assessment beyond that demonstrated by the record).

Generally, the medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2); *Trevizo v. Berryhill*, 862 F.3d 987, 997 (9th Cir. 2017).  When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician. 20 C.F.R. § 404.1527(c)(2)-(6); *Trevizo*, 862 F.3d at 997.  These same factors guide the ALJ's evaluation of the opinion of other medical sources. 20 C.F.R. § 404.1527(e)(2)(ii).

Ultimately, "[t]o reject the uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Trevizo*, 862 F.3d at 997 (internal quotation marks and citation omitted); *Ghanim v. Colvin*, 763 F.3d 1154, 1160-61 (9th Cir. 2014). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Trevizo*, 862 F.3d at 997. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

**B. ALJ's Assessment of the Examining Physicians' Opinions**

Plaintiff argues that the ALJ erred in her assessment of the following examining physicians' opinions: the opinion of Dr. Bleecker, the examining orthopedist (Joint Stip. at 4) (citing AR 31); and, *inter alia*, the opinion of Dr. Halbridge, an examining orthopedic surgeon (Joint Stip. at 7) (citing AR 29, 30, 640). The Court agrees.

1. Dr. Bleecker

H. Harlan Bleecker, M.D., a board certified orthopedic surgeon, examined Plaintiff on June 27, 2013 in connection with Plaintiff's claim for benefits. (AR 758.) Dr. Bleecker observed that Plaintiff could "barely" walk on her tiptoes and heels. (AR 759.) She exhibited a restricted range of motion in her neck and back, slightly restricted flexion in her knees "due to the obesity of [Plaintiff's] thighs," and restricted dorsal flexion in her ankles. (AR 760-61.) The range of motion in her shoulders, elbows, wrists, and fingers were within normal limits. (AR 760.) Plaintiff exhibited decreased sensation to light touch in her thumb, index, and middle fingers. (AR 761.) There was a positive Phalen's test and a positive Tinel's sign bilaterally. (AR 761.) Based on Plaintiff's physical examination and Dr.

Bleecker's review of Plaintiff's medical records, Dr. Bleecker opined that Plaintiff: could sit six hours in an eight hour workday; could stand and walk for six hours in an eight hour workday; could not kneel, squat, or climb; would have difficulty walking on uneven ground; could lift 20 pounds occasionally and 10 pounds frequently; and could only occasionally reach at or above the level of the shoulder joint with either upper extremity.  (AR 762.)

The ALJ found that Dr. Bleecker's opinion was "largely consistent with the medical evidence" but "as subsequently obtained evidence suggests [Plaintiff's] ability to lift, sit and stand are somewhat more limited than previously determined, his opinion is found to somewhat overstate [Plaintiff's] abilities and cannot be given great weight."  (AR 31.)  The ALJ found that Plaintiff could only stand and/or walk for four hours in an eight hour workday, could occasionally reach, could not kneel or crouch, and could occasionally climb stairs but could not climb ladders, ropes, or scaffolds.  (AR 25.)

Neither the ALJ's discussion of Dr. Bleecker's opinion nor her assessment of Plaintiff's RFC addressed Dr. Bleecker's opinion that Plaintiff would have difficulty walking on uneven ground.  (*See generally* AR 25, 31.)  Instead, the ALJ discounted portions of Dr. Bleecker's opinion for overstating Plaintiff's limitations, while ignoring the portion of his opinion that assessed a limitation more restrictive than those adopted by the ALJ.  The ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another.  *Garrison*, 759 F.3d at 1012.  Thus, "an ALJ errs when [s]he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion."  *Id.* at 1012-13.  Because the ALJ ignored Dr. Bleecker's opinion that Plaintiff would have difficulty walking on uneven surfaces, the ALJ erred and the Court cannot say on this record that it was harmless.  The matter must therefore be remanded for further consideration of Dr. Bleecker's opinion.

### 2. Dr. Halbridge

On June 19, 2012, Neil J. Halbridge, M.D., orthopedic surgeon, prepared an Independent Medical Evaluation of Plaintiff (AR 633-43), and on August 6, 2012, he prepared a supplement to that evaluation (AR 644-47). In those examinations, Dr. Halbridge elicited Plaintiff's history of her conditions as well as her account of her activities of daily living. Plaintiff stated that she is independent in bathing, dressing, grooming, oral care, toileting, walking, cooking, and, *inter alia*, climbing stairs. (AR 635.) She stated that she can perform housework, do laundry, drive, and shop independently but sometimes needs assistance with these activities. (AR 635.) She also stated that sometimes she is unable to drive. (AR 635.) Dr. Halbridge conducted a physical examination of Plaintiff as well. Plaintiff tested negative for Phalen's Sign and Tinel's Sign. (AR 636.) Plaintiff's sensation was intact. (AR 637.) Plaintiff's straight leg raises were positive for low back pain. (AR 637.)

Dr. Halbridge made extensive recommendations regarding Plaintiff's medical care. For her cervical spine, he recommended medications and physical therapy with cervical traction and, potentially, a home cervical traction unit. (AR 639.) He suggested that she would be a candidate for surgery – namely an anterior cervical discectomy and instrumented fusion. (AR 639.) He also recommended medications, physical therapy, chiropractic treatment, and possible surgery – lumbar decompression and instrumented fusion – for Plaintiff's lumbar spine. (AR 639.) Dr. Halbridge did not recommend injections for Plaintiff's cervical or lumbar spine because she suffered a lumbar epidural abscess following a prior lumbar epidural steroid injection. (AR 639, 640.) Finally, Dr. Halbridge recommended medications, a wrist brace, and right carpal tunnel release surgery for Plaintiff's carpal tunnel syndrome.

With regards to Plaintiff's functional limitations, Dr. Halbridge opined that Plaintiff is "certainly unable to perform the driving that was required by her prior occupation," is "precluded from driving while on her gabapentin, Ativan, and Wellbutrin," and, further, even while not on those medications, "is precluded from driving more than 20 minutes at a time and no more than a total of one hour per day." (AR 640.) Dr. Halbridge also found that Plaintiff is unable to perform: prolonged upward or downward gazing; pushing, pulling, or lifting weights greater than ten pounds; precluded from bending, stooping, or lifting; and repetitive typing or computer keyboard work or writing greater than 20 minutes at a time and more than a total of one hour per day. (AR 640.)

Plaintiff provided Dr. Halbridge with additional information about her medical history at second examination on August 6, 2012 and Dr. Halbridge conducted an additional physical examination. (AR 644-47.) However, Dr. Halbridge did not revise either his initial treatment recommendations or his assessment of Plaintiff's functional limitations based on this new information. (*See generally id.*)

The ALJ found that Dr. Halbridge's opinion that Plaintiff could not push, pull, or lift more than ten pounds and his opinion that Plaintiff could not use her hands repetitively were reasonably supported by the record and thus entitled to significant weight. (AR 30.) However, she also found that there was "insufficient evidence to support [Dr. Halbridge's] contention that [Plaintiff] cannot drive, cannot gaze upward or downward for any prolonged period of time, and cannot bend, stoop, or lift at all, and, as such, these aspects of his opinion are given little weight." (AR 30.) The ALJ mischaracterizes a portion of Dr. Halbridge's opinion. He did not opine, as the ALJ suggests, that Plaintiff is wholly unable to drive. Instead, he stated that Plaintiff could not drive as much as was required by her former job, could not drive while on gabapentin, Ativan, and Wellbutrin, and more generally was "precluded from driving more than 20 minutes at a time and no more than a total of one hour per day." (*Compare* AR 30 *with* AR 640.) As stated above, the ALJ errs when she rejects a

medical opinion or assigns it little weight while simply ignoring it. *Garrison*, 759 F.3d at 1012-13. Further, the ALJ was plainly aware of Dr. Halbridge's assessment that Plaintiff could not drive more than 20 minutes at a time and no more than an hour a day because, at the administrative hearing, she posed a hypothetical question to the VE involving this precise limitation. (AR 69.) There was also ample evidence in the record to support some limitation on Plaintiff's capacity to drive, including Plaintiff's statements (AR 254) and the opinion of Dr. Standiford Helm, II, Plaintiff's treating anesthesiologist, who stated that side effects from Plaintiff's medications would interfere with her ability to drive (AR 596). Because the ALJ ignored Dr. Halbridge's opinion that Plaintiff could not drive while on her medications and could never drive more than 20 minutes at a time and an hour in a day, the ALJ erred and the Court cannot say on this record that it was harmless. The matter must therefore be remanded for further consideration of Dr. Halbridge's opinion.

## C. ALJ's Assessment of the Medical Expert's Opinion

Plaintiff also challenges the ALJ's evaluation of the opinion of Robert Thompson, M.D., a board certified orthopedic surgeon who testified as the medical expert at the administrative hearing. (Joint Stip. at 4.) Dr. Thompson testified that he had never personally examined Plaintiff but had reviewed the medical record. (AR 49.) After listing Plaintiff's numerous medical diagnoses (AR 50-52), a list that takes up two full pages of the administrative hearing transcript, he provided the following opinion concerning Plaintiff's residual functional capacity:

> Under lifting and carrying up to ten pounds occasionally and nothing higher.
> Under sitting, standing, and walking at one time a maximum of one hour and in
> an eight-hour day a maximum of four hours . . . Under the use of the hands,
> functioning hands on both sides will be restricted to only occasional use that's
> reaching overhead, reaching all others, handling, fingering, feeling, and simply

occasional only. The same with the uses of heat, stairs, and ramps – occasional. Ladders or scaffolds never. Balance unrestricted. Stooping occasional and no kneeling, crouching, or crawling or is not evaluated . . . Under environmental limitations, only occasional exposure to unprotected heights, moving mechanical parts, never exposure to dust, fumes, pulmonary irritants and only occasional extreme cold and extreme heat based mostly upon the work of the issues.

(AR 53.)

Dr. Thompson added, "I'm not certain the individual could walk at a reasonable pace on rough or uneven surfaces or blocks. I think that's questionable." (AR 53-54.) He also added that he would restrict Plaintiff's ability to drive to "occasional" (AR 54), and he agreed with Dr. Halbridge's assessment that Plaintiff would be limited to typing in increments of 20 minutes at a time with at least five minute intervals between for rest (AR 55-56).

The ALJ stated that she found Dr. Thompson's opinion to be "generally well-supported by objective findings and consistent with the evidence of record and therefore entitled to greater weight than the opinions of [two of Plaintiff's treating physicians]." (AR 32.) However, the ALJ stated that she found "insufficient evidence to fully support all aspects of [his] assessment." (AR 33.) Based on this vague rejection of some unspecified portions of Dr. Thompson's opinion, the ALJ made the following assessment of Plaintiff's RFC:

she can lift and/or carry ten pounds occasionally or frequently; she can stand and/or walk for four hours and sit for six hours during an eight-hour workday with the ability to stand and stretch for one to three minutes per hour every

hour; she can occasionally use her hands, including for reaching, handling, and bilateral fingering; can occasionally use foot pedals; can occasionally climb stairs; cannot climb ladders, ropes, or scaffolds; can stoop occasionally; cannot kneel, crouch, or crawl; can occasionally work at unprotected heights; can occasionally work around moving and dangerous machinery; must avoid dust, fumes, and other pulmonary irritants; and can have only occasional exposure to extreme heat or cold.

(AR 25-26.)

A comparison of the ALJ's assessment of Plaintiff's RFC with Dr. Thompson's reveals that, despite her comment that she was according Dr. Thompson's opinion "great weight," the ALJ in fact adopted very few of Dr. Thompson's assessed restrictions. For example, the ALJ rejected Dr. Thompson's opinion that Plaintiff could lift ten pounds only occasionally – instead finding that Plaintiff could lift and/or carry ten pounds frequently. (*Compare* AR 53 *with* AR 25.) The ALJ also rejected Dr. Thompson's opinion that Plaintiff was limited to *sitting*, as well as standing and walking, to a maximum of four hours in a day – finding instead that Plaintiff was able to sit for a total of six hours in an eight-hour workday. (*Compare* AR 53 *with* AR 25.) The ALJ discounted Dr. Thompson's opinion that Plaintiff was limited to only "occasional" driving and to typing in increments of 20 minutes at a time with at least five minute intervals between for rest. (*Compare* AR 54, 55-56 *with* AR 25-26.) Finally, the ALJ made no findings regarding Plaintiff's ability to walk on rough or uneven surfaces, despite Dr. Thompson's opinion that it was "questionable" that Plaintiff could walk on rough or uneven surfaces "at a reasonable pace." (*Compare* AR 53-54 *with* AR 25-26.)

In sum, the ALJ discounted a significant portion if not the majority of Dr. Thompson's opinion, despite stating that she was according it great weight. The ALJ's failure to

13

acknowledge that she was in fact discounting the above portions of the medical expert's opinion and to proffer a single specific reason for doing so[3] constitutes legal error necessitating remand. *Garrison*, 759 F.3d at 1012-13 ("an ALJ errs when [s]he rejects a medical opinion or assigns it little weight while doing nothing more than . . . asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion"). Accordingly, the matter must be remanded for further consideration of Dr. Thompson's opinion. If the ALJ again decides to discount all of the above portions of Dr. Thompson's opinion, she must articulate specific and legitimate reasons for doing so, each of which must be supported by substantial evidence in the record.

## II.    The ALJ's Assessment of the Credibility of Plaintiff's Statements.

### A. Plaintiff's Statements

Plaintiff next contends that the ALJ erred in her evaluation of the credibility of Plaintiff's statements about her symptoms and functional limitations. Plaintiff completed an Adult Function Report on May 8, 2013 in which she provided the following information. Her daily activities consist of waking her son, helping to dress him, preparing his breakfast, and taking him to school. (AR 250, 251.) She also helps bathe her son. (AR 251.) Then she relaxes during the day, eating as needed, and lying down or napping for about 90 minutes in the afternoon. (AR 250.) She picks her son up from school between 3:00 and 4:00 pm. (AR 250.) Her boyfriend prepares dinner. (AR 250.) Plaintiff helps wash dishes. (AR 251.) She takes care of her two dogs and cats: letting them in and out of the house as needed; cleaning the litter box; and providing food and water. (AR 251.) Plaintiff has difficulty falling asleep and staying asleep due to racing thoughts, pain, numbness in her

---

[3]    Instead, the ALJ stated only that that there was "insufficient evidence to fully support all aspects of [Dr. Thompson's] assessment." (AR 33.)

hands, and a headache.  (AR 251.)  She uses a CPAP machine at night.  (AR 251.)  Because of her impairments, Plaintiff sits down while getting dressed, avoids standing and bending for longer periods, and experiences difficulty putting on her pants, socks, and shoes.  (AR 251.)  She prepares simple meals – "sandwiches and microwaveable meals" – on a daily basis, which takes her about 6-15 minutes.  (AR 252-53.)  Her boyfriend prepares the majority of meals.  (AR 253.)  She has difficulty getting items out of cabinets and lifting and carrying heavier pots and pans in the kitchen.  (AR 253.)  She washes dishes and tidies the house on a daily basis and does the laundry, which requires "a full evening with breaks," twice a week.  (AR 253.)  Her boyfriend also assists her with cleaning the house.  (AR 253.)  Every two weeks she spends about thirty minutes shopping for groceries and household items.  (AR 254.)  Plaintiff states that she is able to drive but avoids driving when on pain medications, has trouble getting in and out of a vehicle, and prefers to only travel in the car for short distances.  (AR 254.)  She also indicates that she has trouble turning and twisting to check for traffic and using her left foot to make sudden breaks.  (AR 254.)  She states that she does not go anywhere socially on a regular basis.  (AR 256.)  Plaintiff indicates that she has difficulty standing for more than 10 minutes at a time (AR 256), can walk for about 10-15 minutes before needing to rest (AR 257), has trouble sitting for long periods due to swelling, pain, and numbness (AR 257), and, *inter alia*, avoids typing on a computer due to pain in her hands and fingers and experiences trouble gripping and grasping items (AR 257).  Finally, Plaintiff states that she experiences drowsiness and grogginess as side effects from her medications.  (AR 259.)

At the October 22, 2014 administrative hearing, Plaintiff testified that she lost her prior job because she was laid off, although she did not think she would have been able to continue working full time due to her impairments.  (AR 45-46.)  Plaintiff then signed up for unemployment and, pursuant to that, applied to full time jobs similar to her previous one – even though she did not think she would be physically able to perform the jobs to which she applied.  (AR 46-47.)  Plaintiff testified that she was able to drive but had problems driving:

"my feet swell to a huge size and it's uncomfortable for me. I have pain in both feet and my knees hurt. My back hurts. My shoulders hurt. My arms hurt. My clavicle when I wear the seatbelt hurts and sometimes I have vision issues." (AR 47-48.) Plaintiff testified that she is able to use the computer but can only work on it for a few minutes at a time. (AR 57.) She testified that, when seated at the computer, she suffers pain in in her neck, low back, knees, and feet, and her hands go numb. (AR 57.) She testified that she can sit for about 30 minutes at a time and stand and/or walk for about 15 minutes at time. (AR 58.) She testified that even lying down can become uncomfortable due to numbness so she needs to change positions. (AR 60.) She testified she has problems with anxiety, forgetfulness, and depression. (AR 60, 62.) She also has problems sleeping due to sleep apnea and physical pain. (AR 61.)

### B. Applicable Law

An ALJ must make two findings before determining that a claimant's pain or symptom testimony is not credible. *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record. *Id.*; *see also Marsh v. Colvin*, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015); *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (court must determine "whether the ALJ's adverse credibility finding . . . is supported by substantial evidence under the clear and convincing standard").

In weighing a plaintiff's credibility, the ALJ may consider many factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony . . . that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). However, "subjective pain testimony cannot be rejected on the *sole* ground that it is not fully corroborated by objective medical evidence." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (emphasis added) (citation omitted).

The ALJ must also "specifically identify the testimony [from the claimant that] she or he finds not to be credible and . . . explain what evidence undermines the testimony." *Treichler*, 775 F.3d at 1102 (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)). "General findings are insufficient." *Brown-Hunter*, 806 F.3d at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

## C. Discussion

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms but that her statements concerning the intensity, persistence, and limiting effects of those symptoms are not entirely credible "for the reasons explained in this decision and are not sufficiently supported to warrant the establishment of any limitations beyond those set forth above [in the ALJ's assessment of Plaintiff's RFC]." (AR 27.) The reasons provided by the ALJ for discrediting Plaintiff's testimony are the following: (1) the objective findings of the psychiatric evaluation and orthopedic evaluation that were performed in June 2013; (2) Plaintiff's allegations "are somewhat inconsistent" and she "acknowledged being able to engage in a fairly wide range of activities;" (3) Plaintiff made inconsistent statements to her physical therapist about her

ability to perform some activities; (4) Plaintiff received unemployment benefits for an unspecified period of time following her September 2010 layoff; and (5) Plaintiff missed several physical therapy appointments due to scheduling conflicts. (AR 27-28.) Defendant also urges the Court to consider two notations by Plaintiff's treatment professionals as evidence of malingering or "symptom embellishment." (*See* Joint Stip. at 25.) The Court considers each of these rationales in turn and finds that none of them constitute a specific, clear and convincing reason supported by substantial evidence for discrediting Plaintiff's statements or affirming the ALJ's adverse credibility determination.

### 1. Objective Findings of June 2013 Evaluations

The ALJ's first reason for discrediting Plaintiff's statements, or some portion thereof, is the objective findings of the psychiatric evaluation and orthopedic evaluation that were performed in June 2013. (AR 27.) However, the ALJ did not specifically identify the testimony from Plaintiff that she found inconsistent with these objective findings or explain how these findings undermined any part of Plaintiff's statements. *See Treichler*, 775 F.3d at 1102 (the ALJ must also "specifically identify the testimony [from the claimant that] she or he finds not to be credible and . . . explain what evidence undermines the testimony"). Further, as stated above, "subjective pain testimony cannot be rejected on the *sole* ground that it is not fully corroborated by objective medical evidence." *Rollins*, 261 F.3d at 857. Accordingly, neither of the two June 2013 evaluations are specific, legally sufficient reasons for discrediting Plaintiff's statements.

### 2. Possible Inconsistencies Internally and with Plaintiff's Daily Activities

The ALJ also observed that Plaintiff's allegations "are somewhat inconsistent" and that "while she has asserted being quite incapacitated, she has also acknowledged being able to engage in a fairly wide range of activities." (AR 28.) With respect to the ALJ's first

statement, to the extent that the ALJ is suggesting that some portions of Plaintiff's statements are internally inconsistent, she identifies no specific allegations that are less credible than others because they are contradictory. *See Treichler*, 775 F.3d at 1102. Accordingly, this is not a specific, legally sufficient reason for discrediting any portion of Plaintiff's statements.

With respect to the ALJ's second statement – that Plaintiff engages in "a fairly wide range of activities," an ALJ may rely on a plaintiff's daily activities to support an adverse credibility determination only when those activities either: "contradict [the plaintiff's] other testimony"; or "meet the threshold for transferable work skills" – that is, where the plaintiff "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." *Orn*, 495 F.3d at 639; *Smolen v. Chater*, 80 F.3d 1273, 1284 n. 7 (9th Cir. 1996). The ALJ identifies Plaintiff's activities as the following:

> She is able to take care of her special needs son, including waking him up in the
> morning, preparing meals for him, and taking him to and from school. She has
> also indicated she does some household chores, such as washing dishes, doing
> the laundry, and straightening up the house. She takes care of two dogs and two
> cats, goes outside almost every day, can drive and travel by herself, can shop for
> groceries and household items, and can handle her finances. She enjoys
> watching television, spending time with her boyfriend, spending time with her
> son, visiting with friends and family, and talking on the phone with a friend.

(AR 28.)

The ALJ's suggestion that these activities, as reported by Plaintiff, contradict her subjective complaints regarding the extent to which she is incapacitated is not supported by

substantial evidence in the record. Plaintiff's ability to wake up her son, prepare simple meals for him such as sandwiches and microwave meals (*see* AR 252-53), and drive him a short distance to and from school is not inconsistent with her subjective complaints. Similarly, the fact that she washes dishes once a day and "tidies" the house daily is not inconsistent with her subjective complaints. (*See* AR 253.) Plaintiff also stated that although she can do laundry, it requires "a full evening with breaks." (AR 253.) Similarly, although Plaintiff is responsible for two cats and two dogs, they require minimal care. She stated that she opens the doors for them, cleans the litter box, and provides food and water. (AR 251.) Plaintiff stated that she is able to drive but she avoids driving for long periods and experiences both physical discomfort and visual difficulties while driving. (AR 254.) Plaintiff's shopping excursions are limited to 30 minute increments every two weeks. (AR 254.) Finally, the ALJ suggests that Plaintiff engages in social activities that are inconsistent with her alleged functional limitations – namely, that Plaintiff: watches television; spends time with her boyfriend, who helps her perform all of the above tasks and activities; spends time with her son, who lives with her part-time; and talks on the phone with a friend regularly. However, none of these very limited social activities are inconsistent with Plaintiff's statements about her symptoms and functional limitations. Further, Plaintiff stated that she does not go anywhere social on a regular basis (AR 256), and her statements are consistent with that.

Effectively, the ALJ indicates that she is unwilling to credit Plaintiff's statements because Plaintiff has not lost all motivation and physical capacity for being a mother to her son and a partner to her boyfriend and because she has persisted in doing the bare minimum necessary to keep her household running. However, "[d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." *See Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). Substantial evidence in the record does not support the ALJ's finding that Plaintiff's reported daily activities are inconsistent with her statements concerning her symptoms and functional limitations.

Accordingly, Plaintiff's activities are not a clear and convincing reason supported by substantial evidence for discrediting Plaintiff's statements.

### 3. Statements to Plaintiff's Physical Therapist

The ALJ also asserts that Plaintiff made inconsistent statements to her physical therapist about Plaintiff's ability to type and travel. (*See* AR 28) (citing AR 593). However, in the record cited, Plaintiff did not, as the ALJ contends, tell her physical therapist that she is able to type and travel without limitation; rather, she informed Dr. Helm that she can type for about five minutes without pain and can travel but has pain after half an hour. (AR 593.) These statements are consistent with her statements on the Adult Function Report and at the hearing. Accordingly, the ALJ's characterization of Plaintiff's allegations as inconsistent with her prior statements to a medical treatment provider is not supported by substantial evidence and, thus, is not a clear and convincing reason supported by substantial evidence for finding Plaintiff less than fully credible.

### 4. Plaintiff's Receipt of Unemployment Benefits

The ALJ also cites Plaintiff's receipt of unemployment benefits for an unspecified period of time following her September 2010 layoff. (AR 28) (noting that receiving unemployment benefits is a "process which required [Plaintiff] to certify she was ready, willing, and able to work"). "[R]eceipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime." *Carmickle*, 533 F.3d at 1161-62 (citing *Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988)); *Williams v. Colvin*, 24 F. Supp.3d 901, 916 (N.D. Cal. 2014). However, where, as here, the claimant testifies that when she received those benefits she did not believe that she was physically capable of working but filed for them because she needed the income, the claimant's receipt of unemployment benefits is not a convincing reason for finding the claimant less than fully credible. *See, e.g.,*

*Williams*, 24 F. Supp.3d at 916 (the plaintiff's receipt of unemployment benefits was not a convincing reason for discrediting his testimony where "Plaintiff testified that when he received these benefits, 'I knew that, at the time, I wasn't physically capable of working . . . but I had no other source of income.'").

### 5.  Plaintiff's One-Month Absence from Physical Therapy

The ALJ's last reason for discrediting Plaintiff's statements was that Plaintiff missed several physical therapy appointments in 2011 due to scheduling conflicts.  (AR 28.) Indeed, the record shows Plaintiff returned to physical therapy "after month absence" on August 16, 2011 and that Plaintiff reported to her physical therapist that she had been "unable to come to PT due to scheduling conflicts including a number of meetings and current court case."  (AR 588.)  Her physical therapist informed her that "attendance to PT will be an important factor in determining benefit of therapy services for her current condition" and urged her to "resume physical therapy with recommendations . . . to try to make it 2x/week if at all possible."  (AR 588.)

"[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, [the agency] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record."   SSR 16-3; *see also* SSR 96-07p (superseded by SSR 16-3) ("[claimant's] statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed").  However, the agency may not find a claimant's symptoms less than fully credible on this basis without first considering possible reasons why the claimant may not have complied with treatment or sought treatment consistent with the degree of her complaints.  SSR 16-3; *see also* SSR 96-07p

(same); *Orn*, 495 F.3d at 638 ("[A]n 'unexplained, or inadequately explained, failure to seek treatment' may be the basis for an adverse credibility finding *unless* one of a 'number of good reasons for not doing so' applies.") (emphasis added).

Nevertheless, the ALJ used Plaintiff's one-month absence from physical therapy to discredit her statements without either addressing the adequacy of her explanation for missing those appointments or seeking additional information or clarification about the reasons for her absence. Accordingly, the ALJ did not comply with agency rulings and Ninth Circuit case law in using Plaintiff's month-long absence from physical therapy as a basis for discrediting Plaintiff, and it is not, therefore, a convincing reason supported by substantial evidence for the ALJ's adverse credibility determination.

### 6. Possible Malingering or Symptom Embellishment

Finally, although the ALJ made no finding of malingering, Defendant contends in the Joint Stipulation that "there are several instances in the record in which Plaintiff's medical providers indicated that there was evidence of symptom embellishment." (Joint Stip. at 25.) Specifically, Defendant points to the physical therapist's comment at Plaintiff's December 20, 2011 appointment that Plaintiff's "blood work is positive for RF [(rheumatoid factor)]; accompanying symptoms are highly suspicious considering the seemingly total body and multi-joint involvement." (AR 598.) Defendant also refers to a progress note written by Dr. Wanda Shok Yin Chang, M.D., who is board certified in physical medicine and rehabilitation and one of Plaintiff's treating physicians, at Plaintiff's August 16, 2013 appointment. (Joint Stip. at 25) (citing AR 810). Dr. Chang wrote that Plaintiff "has give way weakness in all extremities." (AR 810.) Defendant contends, without pointing to any support from either the record or medical sources, that Dr. Chang's reference to "give way weakness" indicates possible symptom embellishment. (Joint Stip. at 25.) The Court declines to use these rather ambiguous notes – or Defendant's unsupported interpretations of

23

them – as a basis for affirming the ALJ because the ALJ did not cite either note as a reason for discrediting Plaintiff's statements.  *See Bennett v. Colvin*, 202 F. Supp.3d 1119, 1130 (9th Cir. 2016) ("these are post-hoc arguments not mentioned by the ALJ, and therefore cannot be considered by this Court") (citing *Connett*, 340 F.3d at 874 ("[i]t was error for the district court to affirm the – ALJ's credibility decision based on evidence that the ALJ did not discuss")); *see also Bray v. Comm'r of Soc. Sec. Admin*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ – not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking").

In sum, the ALJ failed to provide a specific, clear, and convincing reason supported by substantial evidence for discounting any portion of Plaintiff's statements and testimony. On remand, the ALJ must either credit Plaintiff's statements or identify which portions of those statements she finds not credible and provide specific, clear, and convincing reasons supported by substantial evidence in the record for that finding.

## III.    **Remand is Warranted and the Court Declines to Reach Other Arguments Raised.**

Because remand is warranted based on the ALJ's assessment of Plaintiff's statements and of the opinions of Drs. Bleecker, Halbridge, and Thompson, the Court need not reach the other arguments raised in the Joint Stipulation, including Plaintiff's arguments concerning the ALJ's determination that Plaintiff's mental impairments are non-severe and the ALJ's assessment of Plaintiff's RFC generally.  However, on remand, the ALJ should ensure that her analysis of Plaintiff's severe impairments and RFC comply with the applicable law and that her rejection, at any step in the analysis, of an opinion offered by a medical source or a statement by Plaintiff is supported by specific and legally sufficient reasons and by substantial evidence in the record.

The Court also finds that this matter is not appropriate for a remand for an award of benefits because it is not clear from the record that, if the ALJ credited Plaintiff's statements as well as the opinions of Drs. Bleecker, Halbridge, and Thompson, she would be required to find Plaintiff disabled on remand. *See Garrison*, 759 F.3d at 1020; *see also id.* n.26. Accordingly, the Court remands for further development of the record, including the proper consideration of the statements and testimony of Plaintiff and the opinions of Drs. Bleecker, Halbridge, and Thompson.

## RECOMMENDATION

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY

DATED: August 17, 2017

KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE